# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DECATUR TRANSIT, INC.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:02-CV-942-VEH** |
| | } | |
| **AMERICAN HEARTLAND** | } | |
| **HEALTH ADMINISTRATORS,** | } | |
| **INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

## I.   INTRODUCTION

Pending before the court are Plaintiff Decatur Transit, Inc.'s ("Decatur Transit") Motion for Partial Summary Judgment (Doc. #32) filed on August 12, 2002, and Defendant Managed Healthcare, Inc.'s ("MHI") Motion for Summary Judgment and in Response to Plaintiff's Motion for Partial Summary Judgment (Doc. #37) filed on October 8, 2002.

Decatur Transit filed evidence and a brief in support (Docs. #33, #34) of its Motion for Partial Summary Judgment on August 12, 2002.  MHI filed its initial brief (Doc. #38) on October 9, 2002, and its evidentiary submission (Doc. #39) on March 3, 2003.  Also on March 3, 2003, Decatur Transit filed a responsive brief.  (Doc. #40).

Decatur Transit originally filed this case in the Circuit Court of Morgan County against Defendant MHI and several other defendants for fraud and violations of Alabama insurance law arising out of the non-payment of health benefit claims for its employees under the Decatur Transit, Inc. Employee Benefits Plan (the "Plan"). (Doc. #1; Doc. #33 ¶ 3). On April 15, 2002, the defendants removed the litigation to this court on the basis of preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* and supplemental jurisdiction under 28 U.S.C. § 1367 for any claims in which original jurisdiction may be lacking. (Doc. #1).

Decatur Transit opted against challenging the removal petition and, on May 20, 2002, filed its Amended Complaint (Doc. #13), which included three claims premised upon ERISA and two claims based upon Alabama law. The defendants named in Decatur Transit's Amended Complaint are: (i) American Heartland Health Administrators ("AHHA"), the initial third party administrator; (ii) MHI, the subsequent third party administrator; (iii) North American Indemnity ("NAI"), as the insurer; (iv) LRS, Inc. ("LRS"), as a party to the initial sales transaction; (v) Benefit Service Consultants, Inc. ("Benefit"), as a party to the initial sales transaction; (vi) Jack Ferguson, as agent of AHHA; (vii) Alphonso Cariglino, as the president and agent of LRS; and (viii) Randy E. Wood, as the president and agent of Benefit.

On December 30, 2003, the court entered an Order staying the case as to Defendants Ferguson and AHHA due to pending bankruptcy proceedings.  (Doc. #75).  The undersigned inherited this case by way of reassignment on June 28, 2004. (Doc. #86).

## II.   DECATUR TRANSIT'S ALLEGATIONS[1]

On or about May 3, 2001, Cariglino and Wood, individually and acting as presidents of LRS and Benefit, respectively, and AHHA and Ferguson solicited, procured, and negotiated the sale of a contract of insurance to Decatur Transit for its Plan through NAI.  (Doc. #13 ¶ 10).[2]  AHHA was the initial third party administrator for the Plan.  (*Id.* ¶ 11).  NAI, as the insurer, was to provide 100 percent coverage for the Plan for a one year period beginning March 1, 2001, and ending February 28, 2002, with AHHA providing administrative services.  (*Id.* ¶ 13).  Decatur Transit sent premiums to AHHA, as agent for NAI.  (*Id.* ¶ 14).  AHHA deducted part of these premiums and paid the balance to NAI.  (*Id.*).

---

[1]The court uses Decatur Transit's allegations in its Amended Complaint by way of background as the nature of its opinion on summary judgment does not necessitate a conventional statement of undisputed and/or disputed facts.

[2]The booklet describing the Plan indicates that it is self-funded.  (Doc. #33 at Ex. N at 39). However, the description of the Plan, based upon Decatur Transit's allegations, do not mirror the substance of what was actually put (or not put) into place.  (*See, e.g.*, Doc. #13 ¶ 43 ("Decatur Transit became a victim of Defendants' scheme of selling insurance as 'reinsurance' . . . ."); Doc. 45 at 9 (court describing similar plan as illegitimate "stop-loss policy, more akin to insurance")).

On or about September 27, 2001, NAI withdrew its approval of AHHA as the administrator.  (*Id.* ¶ 15).  Thereafter, Ferguson and AHHA sent a letter to Decatur Transit soliciting Decatur Transit to continue to use AHHA as the administrator for the Plan and to switch carriers for the Plan from NAI to a new carrier, MarkeTrends, Inc.  (*Id.* ¶ 16).  During this same time, NAI solicited Decatur Transit to remain with it and to switch administrators for the Plan from AHHA to NAI's newly approved administrator, MHI.  (*Id.* ¶ 17).  As part of its solicitation, NAI and MHI represented that they would pay and administer all unpaid claims made under the Plan, including unpaid claims made for services performed before the October 1, 2001, effective date of NAI's approval of MHI as its new administrator.  (*Id.*).  Based on the representations made by NAI and MHI to Decatur Transit and to Cariglino, Decatur Transit agreed to maintain coverage with NAI for the Plan and switched administrators from AHHA to MHI.  (*Id.* ¶ 18).

There are Plan claims for before October 1, 2001, which were initially sent to AHHA, that remain unpaid today.  (*Id.* ¶ 19).  All or almost all Plan claims for October 1, 2001, and later have not been paid.  (*Id.* ¶ 20).  For months, Decatur Transit remained with NAI and NAI's administrator, MHI, based on repeated assurances that claims would be paid soon and on statements blaming the problems on AHHA.  (*Id.* ¶ 21).  Based on the assurances, Decatur Transit sent premiums to

MHI for NAI coverage for the months of October, November, and December of 2001, and January and February of 2002.  (*Id.* ¶ 21).

In January and February of 2002, MHI and NAI would not confirm that they would pay any of the Plan's claims.  (*Id.* ¶ 22).  Before March 1, 2002, Decatur Transit had sent notices to MHI and NAI terminating them as administrator and insurer, respectively.  (*Id.)*.  On March 22, 2002, NAI's attorney, Kevin Marchese, sent a letter to Decatur Transit stating that NAI "has suspended any further indemnity to the [Plan]."  (*Id.* ¶ 23).

Decatur Transit continued to work with MHI to attempt to have the Plan's claims administered.  (*Id.* ¶ 24).  As of April 26, 2002, however, MHI had installed a recording system that screens calls by group number.  (*Id.*)  The result is that Decatur Transit no longer can reach MHI by telephone and no longer has access to MHI's administrative information about the Plan's claims.  (*Id.*).

Decatur Transit's employees, who are also Plan participants, have been complaining for months about unpaid claims.  (*Id.* ¶ 25).  In addition, medical providers have been complaining about unpaid claims.  (*Id.*).  As a result of the Plan's claims' not being paid, Decatur Transit maintains that its labor relations will be irreparably injured,  that its and the Plan's reputations in the community will be irreparably injured, that it and the Plan will probably be sued by Plan participants and

5

by medical providers, and that it and the Plan will continue to have staff time consumed with the Plan's claims not being paid.  (*Id.* ¶ 26).

## III.   STANDARD ON SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.

6

1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with

positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV.   ANALYSIS

### A.   Subject Matter Jurisdiction

Prior to the undersigned inheriting this case, the court raised questions about whether Decatur Transit had standing to pursue the ERISA claims alleged in its Amended Complaint and whether the court could properly exercise federal subject matter jurisdiction over the lawsuit due to its concerns about standing.  (Doc. #48). More specially, the court had significant doubts about Decatur Transit's derivative standing as to count one and its fiduciary standing as to counts two and three.[3]  At this juncture,  however, while lack of standing may very well be a suitable ground for dismissal on a Rule 12(b)(c) or a Rule 56 basis, in light of Decatur Transit's recasting of its amended pleading to state claims under ERISA after removal, the court has federal subject matter jurisdiction:

> [B]ecause the post-removal amended complaint asserted claims under ERISA, we have jurisdiction even if removal was initially improper, *see Pegram v. Herdrich*, 530 U.S. 211, 215 n.2 (2000) ("[The plaintiff] does not contest the propriety of removal before us, and we take no position on whether or not the case was properly removed . . . . [The] amended complaint alleged ERISA violations, over which the federal courts have jurisdiction, and we therefore have jurisdiction regardless of the correctness of the removal."); *see also Grubbs v. Gen. Elec. Credit*

---

[3]The standing issues identified by the undersigned's colleague were limited to statutory interpretation as to the permissible scope of litigants with the right to sue under ERISA as opposed to the federal question of constitutional standing, *i.e.*, whether a party has suffered an injury in fact and has a sufficient stake "in the outcome of the controversy to assume that concrete adverseness which sharpens the presentation of the issues." *Cf. Baker v. Carr*, 369 U.S. 186, 204 (1962) (explaining standard of federal constitutional standing); *Connecticut v. Physicians Heath Services of Connecticut, Inc.*, 287 F.3d 110, 118 (2d Cir. 2002) (determining that State of Connecticut, as assignee of equitable claims,"fails to meet the injury requirement because it does not have a 'concrete private interest in the outcome of the suit'") (citation and internal quotations omitted).

*Corp.*, 405 U.S. 699, 700 (1972) (holding that when a district court has jurisdiction at the time it enters judgment "the validity of the removal procedure followed may not be raised for the first time on appeal").

*Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1280 (11th Cir. 2005) (parallel citations omitted).

### B.   Standing

#### 1.   Derivative Standing Pursuant to 29 U.S.C. § 1132(a)(1)(B)

However, although the court has determined that it has subject matter jurisdiction over count one of Decatur Transit's Amended Complaint, it nonetheless dismisses the claim because of Decatur Transit's lack of derivative standing under ERISA. The court's reasons for drawing this conclusion are twofold: (i) the Eleventh Circuit has yet to extend derivative standing under § 1132(a)(1)(B) to employers; and (ii) regardless of how the Eleventh Circuit might rule on the issue of an employer's derivative standing to sue, Decatur Transit has not satisfied the procedural requirement of obtaining written assignments from the Plan participants. (Doc. #49 at 4 ("Before filing this action, Decatur Transit did not (and does not yet) have written assignments from Plan participants of the Plan claims for benefits asserted in Count I.")).

The civil enforcement provision of ERISA, 29 U.S.C. § 1132(a), provides, in relevant part:

(a) Persons empowered to bring a civil action
A civil action may be brought--
(1) by a participant or beneficiary--
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce
his rights under the terms of the plan, or to clarify his rights to future
benefits under the terms of the plan; . . . .

Accordingly, under ERISA , the two express categories of litigants with independent standing to sue for the recovery of benefits are (i) plan participants; and (ii) plan beneficiaries. *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, 1241 (11th Cir. 2001).

In addition to derivative standing, the Eleventh Circuit has recognized derivative standing under § 1132(a)(1) in the context of a healthcare provider obtaining an assignment of a right to payment. *See Cagle v. Bruner*, 112 F.3d 1510, 1514-15 (11th Cir. 1997) (agreeing with Fifth, Seventh, Eighth, and Ninth Circuits in holding that healthcare provider has derivative standing to bring action against ERISA plan insurance fund when provider has executed form assigning right to payment of medical benefits to it); *see also HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 n.19 (11th Cir. 2001) (reaffirming derivative standing decision in *Cagle*) ("One of our reasons for allowing provider-assignees derivative standing is so that providers will not balance bill participants, thereby requiring participants to bring suit against their insurance

company for unpaid benefits.").

As explained in *Cagle*, the Eleventh Circuit's decision to allow healthcare providers derivative standing under ERISA is connected to their being in a better position (as opposed to plan participants) to recover for services provided and charged by them:

> If provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured's medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to "providers [, who] are better situated and financed to pursue an action for benefits owed for their services."

112 F.3d at 1515 (citations omitted).  This factor of favorable positioning is not so easily recognized with employers because while they may very well be soundly equipped financially to pursue a recovery of benefits, they are, nonetheless, less knowledgeable about the nature of the claims because:  (i) unlike plan participants, they did not receive any medical services; and (ii) unlike healthcare providers, they did not provide any medical services.

Against this legal backdrop, the court concludes it to be very unlikely that the Eleventh Circuit would extend derivative standing under § 1132(a)(1) to employers. *See, e.g., Coyne & Delaney Co. v. Blue Cross & Blue Shield of Virginia, Inc.*, 102

F.3d 712, 717 (4th Cir. 1996) (employer cannot bring claim on behalf of employee in suit against insurance company); *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 699 (7th Cir. 1991) (only participants or beneficiaries can sue for benefits under § 502(a)(1)(B)); *Teagardner v. Republic-Franklin, Inc. Plan*, 909 F.2d 947, 951-52 (6th Cir. 1990) (only current participants and beneficiaries can sue under § 1132(a)(1)(B) of ERISA); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 987-88 (4th Cir. 1990) (plan fiduciary cannot bring § 1132(a)(1)(B) suit under ERISA); *Allstate Ins. Co. v. The 65 Security Plan*, 879 F.2d 90, 94 (3d Cir. 1989) (only participants or beneficiaries can sue for benefits under § 1132(a)(1)(B) of ERISA; the Secretary of Labor cannot).

However, even if the Eleventh Circuit were to allow employers to exercise derivative standing under § 1132(a)(1), Decatur Transit's count one would still fail because it has not obtained the necessary assignments of benefits to proceed with the claims. *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, 1241 (11th Cir. 2001) ("Without proof of an assignment, the derivative standing doctrine does not apply."). In *Hobbs*, the Eleventh Circuit summarized the status of derivative standing under ERISA:

> Thus, while this court has allowed healthcare providers to use derivative standing to sue under ERISA, it has only done so when the healthcare provider had obtained a written assignment of claims from a

13

patient who had standing to sue under ERISA as a "beneficiary" or "participant." *See Cagle*, 112 F.3d at 1512-13 (patient's father signed form assigning to hospital right to payment of dependent son's medical benefits under ERISA- governed health plan); *see also HCA Health Servs.*, 240 F.3d at 986, 989 (medical center obtained written assignment to receive payment from participant's ERISA-governed insurance benefits). Here, Blue Cross failed to demonstrate, in response to the motion to remand, that Hobbs and Irvine obtained an assignment of benefits from their patients.

*Id.* Therefore, pursuant to *Hobbs*, absent evidence of a valid assignment, derivative standing is unavailable under ERISA.   *Id.*

In acknowledging its lack of assignment documentation,[4] Decatur Transit maintains that the court should recognize its derivative standing by virtue of an equitable assignment due to its payment of outstanding claims to healthcare providers on behalf of participants.  (Doc. #49 at 4).  However, in the absence of any legal authority offered to support this unique position and confronted with binding Eleventh Circuit precedent requiring evidence of an executed written assignment, the court is not persuaded that an equitable assignment is sufficient to support derivative

---

[4]The court notes that another part to its derivative standing analysis involves whether the plan contains a valid and unambiguous anti-assignment provision.  Because the court otherwise finds that Decatur Transit lacks the ability to sue derivatively, it does not reach this particular issue, but does point out that the Plan purports to forbid assignments in the absence of obtaining consent from the Contract Administrator:  "The coverage and benefits provided under the Plan are not assignable without the Contract Administrator's consent."  (Doc. #33 at 35); *see Physicians Multispeciality Group v. The Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir.) ("Considering this issue, we are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision.") (citations omitted), *cert denied*, 125 S. Ct. 620 (2004).

standing under § 1132(a)(1).  *Cf. Sanson v. General Motors Corp.*, 966 F.2d 618, 622 (11th Cir. 1992) (pointing out that "argument that ERISA provides inadequate remedy is insufficient reason to overcome language of statute") (citing *First Nat'l Life Ins. v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1550 (11th Cir.1992)).

Finally, Decatur Transit also points out that, pursuant to *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347 (11th Cir. 1998), an opposing party may waive the derivative standing subject matter jurisdiction argument.  (Doc. #49 at 8).  The court not only agrees with this principle, but also recognizes its application under the circumstances of this case.  *See* § IV.A., *supra*.  However, a waiver on the issue of derivative standing subject matter jurisdiction does not create a statutory cause of action under ERISA when the pursuit of such a claim would not otherwise be available because of want of standing.[5]  Moreover, the posture of the parties, with competing motions for summary judgment pending, raises waiver in a significantly different context than does the *Sanders* decision.  Furthermore, the court put the parties on notice that, regardless of any agreement among them as to standing, it fully intended to independently evaluate the issue.  Therefore, for the reasons explained

---

[5]The court recognizes that MHI does not address the issue of Decatur Transit's derivative standing in its summary judgment papers, which is not surprising given its joinder in the removal of the lawsuit to this court.  However, regardless of this omission, the court is not obligated to overlook the ground in analyzing the propriety of summary judgment for either party.

above, count one of Decatur Transit's Amended Complaint premised upon §
1132(a)(1)(B) of ERISA is due to be dismissed for lack of derivative standing.

### 2.    Fiduciary Standing Pursuant to 29 U.S.C. §§ 1132(a)(2)-(3)

Counts two and three are premised upon Decatur Transit's standing as a
fiduciary to the Plan.  As a general proposition, while a fiduciary cannot sue for
benefits under § 1132(a)(1)(B), ERISA expressly bestows upon fiduciaries standing
to bring claims under §§ 1132(a)(2)-(3).  Regarding fiduciary status, the Eleventh
Circuit has recently stated:

> ERISA provides that a person is a fiduciary with respect to the plan to
> the extent (i) he exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises any authority
> or control respecting management or disposition of its assets, (ii) he
> renders investment advice for a fee or other compensation, direct or
> indirect, with respect to any moneys or other property of such plan, or
> has any authority or responsibility to do so, or (iii) he has any
> discretionary authority or discretionary responsibility in the
> administration of such plan. ERISA § 3(21)(A), 29 U.S.C. §
> 1002(21)(A). Significantly, under this definition, a party is a fiduciary
> only "to the extent" that it performs a fiduciary function. As such,
> fiduciary status under ERISA is not an "all-or-nothing concept," and "a
> court must ask whether a person is a fiduciary with respect to the
> particular activity at issue." *Coleman v. Nationwide Ins. Co.*, 969 F.2d
> 54, 61 (4th Cir.1992). . . .  The question whether a party is an ERISA
> fiduciary is a mixed question of law and fact.

*Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005).

Also, in making a fiduciary status determination, the court is mindful that how a party

functions with respect to a plan predominates over how its role is characterized or labeled.

According to the summary plan description ("SPD") included in the record, Decatur Transit is both the Plan Sponsor and the Plan Administrator.  (Doc. #33 at Ex. N at DT 00350; *id.* at 39).  AHHA, on the other hand, is identified as the Contract Administrator.[6]  (Doc. #33 at Ex. N at DT 00350 ("Benefits Administered By: American Heartland Health Administrators, Inc."); *id.* at 39).

As the Plan Administrator, Decatur Transit "reserves the right at any time and from time to time to modify or amend, in whole or in part, any or all of the provisions of this plan." (Doc. #33 at Ex. N at 35).  Moreover, the SPD states that "[a]lthough the Plan Administrator expects this plan to continue in its present form for an indeterminable period, this plan is not a vested plan and as such is subject to modification or termination at any time." *Id.*  Furthermore, the SPD provides that the "Plan is administered by the Plan Administrator with the help of a Contract Administrator, with whom you should file claims.  Mail your claim forms to the Contract Administrator." (Doc. #33 at Ex. N at 39).

Concerning the powers and duties of the Contract Administrator, the expressed

---

[6]As noted above, MHI later replaced AHHA regarding the administration of claims under the Plan.

17

intent is for it to have "maximum legal discretionary authority[:]"

- •       to construe and interpret the terms an [sic] provisions of the Plan,
- •       to make determinations regarding issues which relate to eligibility for benefits within the confines of the Plan's design[,]
  - •       to decide disputes which may arise relative to a Covered Person's rights,
- •       to decide questions of Plan interpretation, and
- •       to decide those of fact relating to the Plan.

(Doc. #33 at Ex. N at 35).   Additionally, the entire claims review procedure is administered by the Contract Administrator.  (*Id.* at 37 ("The decision of the Contract Administrator, in its sole discretion, shall be final and binding on all parties.")). Nowhere in the SPD does the discretion to administer or manage claims fall to Decatur Transit.

The United States Supreme Court has held that ERISA plan sponsors, such as employers or boards of directors for employers, do not serve as fiduciaries when they act "to adopt, modify, or terminate welfare plans." *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995)).  In reaching this decision, the *Spink* Court explained:

> Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries. As we said with respect to the amendment of welfare benefit plans in *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 115 S. Ct. 1223, 131 L. Ed.2d 94 (1995), "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Id.*, at 78,

18

115 S. Ct., at 1228 (citing *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (C.A.6 1990)). When employers undertake those actions, they do not act as fiduciaries, 514 U.S., at 78, 115 S. Ct., at 1228, but are analogous to the settlors of a trust, *see Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1188 (C.A.7 1994). This rule is rooted in the text of ERISA's definition of fiduciary. *See* 29 U.S.C. § 1002(21)(A) (quoted n.2, *supra*). As the Second Circuit has observed, "only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration," does a person become a fiduciary under § 3(21)(A). *Siskind v. Sperry Retirement Program, Unisys*, 47 F.3d 498, 505 (1995).

*Spink*, 517 U.S. at 890.

Decatur Transit's actions in this case differ sharply from that of altering a plan term or otherwise acting in the capacity of settlors of a trust. For example, Decatur Transit agreed to NAI's recommended replacement of AHHA with MHI as the Plan Administrator, paid outstanding claims owed to healthcare providers under the Plan, and sent notices terminating the relationships that NAI and MHI had with the Plan, as insurer and administrator, respectively. (Doc. #49 at 10); *see, e.g., Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465  (4th Cir. 1996) ("[T]he power (through plan amendment) to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of § 1002(21)(A).") (citations omitted). Therefore, because Decatur

Transit's efforts to proceed as a fiduciary under §§ 1132(a)(2)-(3) fail on other grounds, the court accepts, without deciding, that, as a general principle, Decatur Transit is a fiduciary of the Plan with respect to managing and monitoring those with whom it selected to insure and administer health benefit claims. *Selman*, 98 F.3d at 1465 ("Moreover, [the discretionary authority to manage or administer a plan] carries with it a duty "to monitor appropriately" those subject to removal.").

The deficiencies with Decatur Transit's efforts to pursue claims under §§ 1132(a)(2)-(3) as a fiduciary turn upon what the true nature of the dispute is and, concomitantly, who the real party seeking redress is. In relevant portion, § 1132(a) states:

> A civil action may be brought--
> (1) by a participant or beneficiary-- . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [Liability for breach of fiduciary duty];
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter [Protection of Employee Benefit Rights, 29 U.S.C. §§ 1001-1169] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a); *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia,*

*Inc.*, 102 F.3d 712, 714 (4th Cir. 1996).

In a case decided by the Fourth Circuit Court of Appeals that is strikingly similar to this one, an employer attempted to sue Blue Cross for breach of fiduciary duty under §§ 1132(a)(2)-(3).  In reversing the trial court's decision, the *Coyne* court held unequivocally that:

> ERISA does not afford fiduciaries a cause of action for benefits. ERISA is a "comprehensive and reticulated statute" which does not provide remedies other than those expressly set forth by Congress.  We therefore decline Coyne & Delany's invitation to read into the more general language of ERISA section 502(a)(3) an action for fiduciaries which Congress saw fit to deny them under the specific terms of section 502(a)(1)(B).

*Coyne*, 102 F.3d at 713 (internal citation omitted).  More specifically, in disallowing the employer to proceed under either civil enforcement provision, the court reasoned:

> Although Coyne directs our attention to sections 502(a)(2) and (a)(3), the analysis of who may recover benefits under ERISA must begin with section 502(a)(1)(B), the section which specifically provides a cause of action for benefits. Coyne's description of its claim as one for breach of Blue Cross' fiduciary duty does not alter the fact that it is seeking medical benefits which it claims are owed to Tyree. To permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading; indeed every wrongful denial of benefits could be characterized as a breach of fiduciary duty under Coyne's theory.

*Coyne*, 102 F.3d at 714.

The *Coyne* court further explained that with respect to § 1132(a)(2), the United

States Supreme Court has made it clear that "any recovery under section 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries" and that suing for deliberate delay in the processing of a benefits claim does not fall into that category. 102 F.3d at 715 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)); *see, e.g., Crocco v. Xerox Corp.*, 137 F.3d 105, 107 n.2 (2d Cir. 1998) (recognizing that "§ 502(a)(2) creates right of action for plaintiffs suing for breach of fiduciary duty on behalf of the plan" and that "relief available under § 502(a)(3) [is limited] to traditional equitable remedies, which do not include compensatory damages"); *Ream v. Frey*, 107 F.3d 147, 152 (3d Cir. 1997) ("Nor could they proceed under ERISA § 502(a)(2) because that provision does not allow for individual recovery.") (citation omitted); *Adamson v. Armco*, 44 F.3d 650, 654 n.3 (8th Cir. 1995) (dismissing §§ 502(a)(2)-(3) claims as time-barred, but noting other potential applicable limitations to relief sought under these provisions); *Lee v. Burkhart*, 991 F.2d 1004, 1007 (2d Cir. 1990) ("[A]n action under Section 502(a)(2) may be brought only on behalf of a plan itself rather than for the benefit of an individual participant[.]") (citation omitted); *Hozier v. Midwest Fasterners, Inc.*, 908 F.2d 1155, 1162 n.7 (3d Cir. 1990) ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by either § 409 or § 502(a)(2)."); *Bryant v. International Fruit Prods. Co.*,

886 F.2d 132, 135 (6th Cir. 1989) ("As the language regarding fiduciary duty suits in section 1109 [as asserted pursuant to § 1132(a)(2)] makes clear, ERISA contemplates that breaches of fiduciary duties injure the plan, not individual beneficiaries, and any recovery thus goes to the plan."); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir. 1988) ("[T]he [*Russell*] Court concluded that Congress had created liability for breach of fiduciary duty [under § 1132(a)(2)] only in favor of the *plan*, and *not* in favor of individual beneficiaries.") (citation omitted) (emphasis in original).

As for § 1132(a)(3), the *Coyne* court, relying in part upon a decision issued by the Fifth Circuit, reached a similar conclusion that the provision is "intended to address violations affecting a plan more generally" and does not extend to "wrongs suffered by individual [participants.]"  Instead, the appropriate civil enforcement provision to use for obtaining benefits due under a plan is § 1132(a)(1)(B):

> As the Fifth Circuit put it, "Section 502(a)(3) provides for relief apart from an award of benefits due under the terms of a plan. When a beneficiary [or a participant] simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B)." *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1335 (5th Cir.1992).

*Coyne*, 102 F.3d at 715; *see also Lee*, 991 F.2d at 1011 ("The plain language of [§ 502(a)(3)] does not provide for monetary relief and a review of the legislative history

23

confirms that Congress did not contemplate that this phrase would include an award of money damages."); *Drinkwater,* 846 F.2d at 825 ("[W]e conclude, as have the Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits, that extra-contractual damages are unavailable under § 1132(a)(3). We give our transcontinental imprimatur to the Ninth Circuit's simple, appealing expression of that conclusion:  '[I]t appears that Congress used the word 'equitable' [in § 1132(a)(3)] to mean what it usually means--injunctive or declaratory relief.'") (footnotes omitted).

Similar to the *Coyne* case, the heart of this lawsuit (as it pertains to ERISA) is about Decatur Transit's employees' (*i.e.* the participants') unpaid claims made under the Plan.  While, admittedly, unlike the *Coyne* case, this lawsuit is not limited to a claim of individual benefits for a single participant, it does seek to recover what could otherwise be sought under § 1132(a)(1)(B).  Such an expansive reading of § 1132(a)(3) would be contrary to the United States Supreme Court's interpretation of ERISA's civil enforcement provisions.  *Coyne,* 102 F.3d at 716 ("[I]n finding that section 502(a)(3) was a catchall provision, however, the Court stated that it provides 'equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.'") (quoting *Varity Corp. v. Howe*, 516 U.S. 489 (1996)).  As the Supreme Court instructed in *Varity* regarding the parameters of § 1132(a)(3):

We should expect the courts, in fashioning "appropriate" equitable

24

relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others."  Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

516 U.S. at 515.

Finally, Decatur Transit's counts under §§ 1132(a)(2)-(3) fail for the additional reason that to the extent it has already paid outstanding claims to healthcare providers, Decatur Transit is not, through this litigation, really seeking payment of benefits for participants' claims made under the Plan, but rather it is pursuing reimbursement for the expenditures that it made to assist the Plan and its employees. (Doc. #49 at 7 (discussing healthcare providers' agreements to reimburse Decatur Transit for payments made by Plan)).  In seeking recoupment for monies spent from its own coffers (as opposed to, *e.g.*, restitution to the Plan), Decatur Transit is not functioning as a fiduciary for the benefit of the Plan, but rather is operating as an employer for its own benefit. *Rosenbaum v. Davis Iron Works, Inc.*, 669 F. Supp. 813 (E.D. Mich. 1987) (determining that employer, who also is plan administrator, lacks standing to pursue counterclaim for breach of fiduciary duty when suing in its capacity as employer and for its sole benefit), *aff'd in part and rev'd on other grounds*

*in part*, 871 F.2d 1088 (6th Cir.), *cert. denied*, 493 U.S. 890 (1989);[7] *cf. Sunshine-Jr.,* 960 F.2d at 1550-51  (indicating that "relevant fiduciary relationship is one with respect to the plan") (citing *Russell*, 473 U.S. at 139); *Dime Coal Company, Inc. v. Combs*, 796 F.2d 394, 396 (11th Cir. 1986) (determining that employer seeking reimbursement for mistaken contributions to multiemployer plan lacks standing to pursue claim against trustees under ERISA).

## C.     Preemption

Having determined that the ERISA counts are all due to be dismissed due to lack of standing, the court now addresses MHI's preemption argument with respect to § 27-10-1 of the Code of Alabama.  In evaluating preemption of this count, it is important to note that § 27-10-1 is unrelated to the payment of benefits under a plan. Section 27-10-1(a) specifically provides:

> No person shall in this state, directly or indirectly, act as agent for, or otherwise represent or aid on behalf of another, any insurer not then authorized to transact such insurance in this state in the solicitation, negotiation or effectuation of insurance or annuity contracts, forwarding of applications, delivery of policies or contracts, inspection of risks,

---

[7]As pointed out in a later Southern District of New York decision, the United States Supreme Court opinion in *Lockheed v. Spink*, 517 U.S. 882 (1996), has since abrogated an unrelated portion of the *Rosenbaum* case.  *See Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 319 (S.D.N.Y. 2003) ("The cases on which Plaintiffs rely do not support this argument.  *Rosenbaum v. Davis Iron Works, Inc.*, 669 F. Supp. 813, 817 (E.D. Mich.1987), has been superceded by *Lockheed v. Spink*, 517 U.S. 882 (1996), which held that requiring an employee to waive employment-related claims in exchange for benefits under ERISA is not a prohibited transaction between the plan sponsor and participant.") (parallel and other citations omitted).

fixing of rates, investigation or adjustment of losses, collection of premiums or in any other manner in the transaction of insurance with respect to subjects of insurance resident, located or to be performed in this state.

In analyzing whether a state statute relating to insurance is preempted under ERISA, the Eleventh Circuit, largely relying upon the United States Supreme Court opinion in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41(1987), has explained:

Under ERISA, the preemption of state law claims is governed by ERISA sec. 514, 29 U.S.C. sec. 1144. In *Dedeaux*, 107 S. Ct. 1549, while ruling that an employee/beneficiary's common-law claims against an insurer under an employee benefits plan were preempted, the Supreme Court described Section 514 as consisting of separate parts; two of these parts--a "preemption clause" found in Section 514(a), 29 U.S.C. sec. 1144(a), and a "saving clause" found in Section 514(b)(2)(A), 29 U.S.C. sec. 1144(b)(2)(A)--are important to the decision in the case. In summarizing how Section 514 operated, the Court explained: "if a state law relates to employee benefit plans it is preempted [by the preemption clause]. [cite] The saving clause excepts from the preemption clause laws that regulate insurance. [cite]." *Dedeaux*, 107 S. Ct. at 1552 (original brackets and quotation marks deleted) (emphasis added). Therefore, unless Fla. Stat. sec. 624.155 regulates insurance and is thus subject to the ERISA saving clause of Section 514(b)(2)(A), 29 U.S.C. sec. 1144(b)(2)(A), ERISA preempts the state statute.

To determine whether a state statute regulates insurance within the meaning of the ERISA saving clause, the Supreme Court has adopted a two-step approach; for a statute to avoid preemption both steps must be passed. *See Dedeaux*, 107 S. Ct. at 1553; *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985). "First, [the Court] took what guidance was available from a 'common-sense view' of the language of the saving clause itself ["regulates insurance"]. [cite]. Second, [the Court] made use of the case law interpreting the

27

phrase 'business of insurance' under the McCarran-Ferguson Act, 15 U.S.C. sec. 1011 et seq., in interpreting the saving clause." *Id.* (footnote omitted).  For this second step, three criteria have emerged to determine whether a state law falls within the McCarran-Ferguson Act's reference to "business of insurance": "*[f]irst*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry." *Metropolitan Life Ins. Co.*, 105 S. Ct. at 2391 (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982)) (emphasis in original).

*Anschultz v. Connecticut General Life Ins. Co.*, 850 F.2d 1467, 1468 (11th Cir. 1988) (parallel citations and footnote omitted).  In *Anschultz*, the Eleventh Circuit determined that a Florida statute, which permitted a beneficiary to pursue various civil remedies for breach of a plan provision, fell outside of the ERISA saving clause. *Anschultz*, 850 F.2d at 1468-69.

Another aspect to determining preemption that periodically comes into play when a self-insured fund is involved is the so-called deemer clause.  *See FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990) (discussing effect of deemer clause with respect to preemption of self-funded plan).  The deemer clause provides:

> Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).  In *Holliday*, in determining that a Pennsylvania state law

prohibiting a plan's right to subrogation does not reach self-funded plans by virtue of

the deemer clause, the United States Supreme Court explained:

> Our interpretation of the deemer clause makes clear that if a plan is
> insured, a State may regulate it indirectly through regulation of its
> insurer and its insurer's insurance contracts; if the plan is uninsured, the
> State may not regulate it. As a result, employers will not face "
> 'conflicting or inconsistent State and local regulation of employee
> benefit plans.' "

498 U.S. at 64.

Subsequent to the Eleventh Circuit's *Anschultz* opinion, the United States

Supreme Court issued a decision in *New York State Conference of Blue Cross & Blue*

*Shield Plans v. Travelers*, 514 U.S. 645 (1995), which gives further guidance on the

contours of ERISA preemption.  In *Travelers*, the Court, in narrowing the often

described sweeping scope of ERISA preemption, identified three types of state laws

that Congress intended for ERISA to preempt:  (i) laws that "mandate[ ] employee

benefit structures or their administration[;]" (ii) laws that "provide[ ] alternative

enforcement mechanisms[,]" and (iii) laws that "bind plan administrators to any

particular choice and thus function as a regulation of an ERISA plan[.]"  514 U.S. at

659-660.  Regarding the impact of *Travelers*, the Eleventh Circuit has stated in a case

analyzing the propriety of a removal based upon ERISA preemption and deciding in

favor of remand that:

> We do find relevant, however, the recent sea change in courts'
> willingness to apply the preemption doctrine expansively. As we
> recently observed, in *New York State Conference of Blue Cross & Blue
> Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, (1995), the Supreme
> Court has begun "essentially [to] turn[ ] the tide on the expansion of the
> preemption doctrine[.]" *Morstein v. National Insurance Services, Inc.*,
> 93 F.3d 715, 721 (11th Cir.1996) (en banc).

*Whitt v. Sherman Intern. Corp.*, 147 F.3d 1325, 1333 (11th Cir.1998) (parallel

citations omitted).

Section 27-10-1 does not fall into any of the *Travelers'* categories.  Nor does

§ 27-10-1 in any way implicate the scope of the coverage available or required under

a plan.  *See Morstein v. National Ins. Servs., Inc.*, 93 F.3d 715, 723 n.11 (11th

Cir.1996) (recognizing post-*Travelers* that "an action brought by a beneficiary against

an insurance company regarding the scope of the coverage of the plan. . . . would

[still] be preempted" under ERISA).[8]  Therefore, based upon the Supreme Court's

more restrictive view of preemption under ERISA as expressed in *Travelers* and the

Eleventh Circuit's express recognition of the changing tide, the court is not inclined

to find that Decatur Transit's claim against MHI under § 27-10-1 relates to the Plan

---

[8]*Morstein* addresses preemption of Alabama common law claims post-*Travelers* and draws
a distinction between ERISA and non-ERISA entities.  The parties have not cited to nor has the court
been able to locate a reported Eleventh Circuit decision that addresses the impact of *Travelers* on
the preemption Alabama statutory insurance law such as or comparable to § 27-10-1.

in such a manner that ERISA preempts it. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983) ("Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan.") (citation omitted); *see also Morstein*, 93 F.3d at 721-22 (discussing impact of *Travelers* decision on reach of ERISA preemption and adopting Fifth Circuit rationale that "Congress did not intend for ERISA preemption to extend to state law tort claims brought against an insurance agent") (citing *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990)).[9]

Alternatively, the court holds that to the extent § 27-10-1 is preempted by ERISA, it is saved by ERISA's saving provision because the statute regulates the insurance industry within Alabama and is consistent with the three criteria under the McCarran-Ferguson Act that the Supreme Court has directed the courts to consider in its two-step approach to ERISA saving provision analysis.[10] For example, § 27-10-

---

[9]As part of its reasoning in *Morstein*, the Eleventh Circuit recognized that its holding equalized the legal exposure an agent faces when allegedly inducing another to act detrimentally:

> These same agents currently face the threat of state tort claims if they make fraudulent misrepresentations to individuals and entities not governed by ERISA. To hold these agents accountable in the same way when making representations about an ERISA plan merely levels the playing field.

93 F.3d at 723.

[10]Due to its overlap with § 27-10-1, the court similarly concludes that the count five relationship scheme claim is not preempted by ERISA, or if preempted, it is saved by the ERISA saving provision and is unaffected by the deemer clause because its construction does not deem the

1 is strikingly different than Alabama's subrogation rule that the Eleventh Circuit found to be preempted in *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1355-56 (11th Cir. 1998).  In contrast to Alabama's subrogation rule, which applies to all actions for subrogation, § 27-10-1's focus is on prohibiting unauthorized activity within the insurance industry so it is "'specifically directed toward [the insurance] industry[.]'"  *Sanders*, 138 F.3d at 1356 (citation omitted).

Also, dissimilar to the *Sanders* case, the deemer clause's exemption of self-funded plans from state insurance laws is not triggered.  *Id.*  As correctly pointed out by Decatur Transit, none of its state law claims relating to § 27-10-1 turn upon treatment of the self-funded Plan as an insurance company.  (Doc. #40 at 3).  Put differently, § 27-10-1 does not purport to limit a plan's right to reimbursement nor does it otherwise impose upon a plan the incorporation of state restrictions or regulations relating to benefits.[11]  As such, the deemer clause's prohibition against the treatment of a self-funded plan as an entity subject to state insurance laws does not mandate preemption under these circumstances.  Alternatively, because serious questions exist as to the legitimacy of the Plan as an ERISA-governed one, the deemer clause is not implicated. (Doc. #45 at 9-10 (*Home Healthcare Affiliates of*

_____

Plan to be engaged in the business of insurance.

[11]The reasons why § 27-10-1 do not relate to an ERISA plan are interwoven with why the deemer clause is in operative in this instance.

*Mississippi, Inc. v. American Heartland Health Administrators, Inc.*, 1:01CV489-D-A (N.D. Miss. Mar. 21, 2003)) (discussing Department of Labor Advisory Opinion 2003-03A (Feb. 13, 2003) and finding no preemption) ("[N]either AHHA nor the 'reinsurance company' constitutes an employee benefit plan within the meaning of ERISA . . . .") (citing *Smith v. Arkansas Blue Cross & Blue Shield*, 781 F. Supp. 1149 (N.D. Miss. 1991)); *see also generally* Doc. #39).[12]

## D.    Remand of State Law Claims

Having concluded that they are not preempted (or alternatively, that they are saved from preemption and unaffected by the deemer clause) under ERISA, pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise jurisdiction over Decatur Transit's state law claims. Therefore, the court will enter an order remanding all state law claims to the Circuit Court of Morgan County.

## V.    CONCLUSION

The ERISA claims asserted by Decatur Transit are due to be dismissed due to lack of standing.   Consequently, the court does not reach the merits of Decatur Transit's Motion for Partial Summary Judgment.   The state law claims asserted by

---

[12]Although not integral to the court's decision, it is worth noting that the Department of Labor's conclusion that the Plan is not really ERISA-based provides additional rationale for dismissing Decatur Transit's ERISA counts.  For example, without an ERISA-governed plan, there are no ERISA fiduciaries or entities connected to the lawsuit, much less any actionable ERISA claims.

Decatur Transit survive preemption under ERISA.  Accordingly, the court will enter an order denying MHI's Motion for Summary Judgment in part.  The court, in its discretion under § 1367(c)(3), declines to exercise jurisdiction over the state law claims, and will enter an order remanding them to the Circuit Court of Morgan County.

   **DONE** and **ORDERED** this 10th day of November, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge